

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

April 12, 1948

Hon. Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-540

Re: Accrual of penalty and in-
terest on unpaid county
taxes on the lands set apart
to endow The University of
Texas.

Dear Sir:

By your letter of March 16th we are advised that in paying taxes due the counties on lands belonging to The University of Texas your Department ". . . in attempting to make the appropriation for each biennium extend as far as possible . . . has taken advantage of the statutes that authorize discounts and also in some instances has paid to a certain county involved half the payment and let the other half go delinquent . . . The question of penalty and interest arises each year when any portion of the unpaid taxes is paid . . ." You re-quest that we advise you as to "whether the State is required to pay penalty and interest on unpaid taxes as above set out and whether or not the present appropriation authorizes the payment of penalty and interest."

Section 16(a) of Article VII of the Constitution of the State of Texas reads as follows:

"All land mentioned in Sections 11, 12 and 15 of Ar-ticle VII, of the Constitution of the State of Texas, now belonging to the University of Texas shall be subject to the taxation for county purposes to the same extent as lands privately owned; provided they shall be rendered for taxation upon values fixed by the State Tax Board; and providing that the State shall remit annually to each of the counties in which said lands are located an amount equal to the tax imposed upon said land for county pur-poses." (Sec. 16(a), Art. VII, adopted Nov. 4, 1930).

In order to effectuate the above-quoted provision the 42nd Legislature enacted S.B. 403, Ch. 93, Acts, Regular Session, 42nd Legislature, which act, carried as Article 7150c, V.C.S., reads as follows:

"Sec. 1. All the lands set apart for the endowment of the University of Texas by Section 15 of Article 7 of the Constitution of 1876, and by Chapter 72 of the Acts of the Regular Session of the 18th Legislature, which are now unsold, are hereby declared to be subject to taxation for county purposes in the counties in which they are located, to the same extent as lands privately owned in said counties.

"Sec. 2. It shall be the duty of the Comptroller of Public Accounts, from records in his office, to submit to the State Tax Board data as to value fixed upon privately owned lands contiguous to the University of Texas lands in the several counties.

"Sec. 3. It shall be the duty of the Commissioner of the General Land Office to furnish the State Tax Board with maps showing the location of said University of Texas lands, herein declared to be subject to taxation.

"Sec. 4. It shall be the duty of the State Tax Board to place the valuation upon which said land shall be assessed and rendered for taxation. It shall further determine the taxable value of lands in each county separately. In arriving at its amount to be paid in taxes the value of the land only shall be considered, and not the value of any buildings or other improvements, owned by the State, and situated upon said land.

"Sec. 5. The Tax Collector of each county which contains any of the land enumerated in Section 1, hereof, shall render to the Comptroller of Public Accounts by October 1 of each year a certified statement showing the values fixed by the State Tax Board upon said lands, the county rate of taxation, and the amount due said county as taxes upon said land.

"Sec. 6. It shall be the duty of the Comptroller of Public Accounts to issue warrants upon the General Fund to pay taxes due each county, beginning with taxes assessed for the year 1931, and annually thereafter; said warrants to be issued and mailed to the several counties within the time as now provided by law for the payment of county taxes on privately owned lands." Acts 1931, 42nd. Leg., p. 136, ch. 93.

In your request you state that ". . . since the adoption of the . . . Constitutional Amendment and also the enactment of S.B. No. 403 by the 42nd Legislature, this department has construed the law to mean that no interest and penalty would accrue on any portion of taxes becoming delinquent under the above mentioned law."

In 1931 this Department in Opinion No. 2853 considered various features of Article 7150c. The opinion makes the follow= ing observation:

"It will be noted that the Constitutional Amend- ment in question authorizes the taxation of all lands set apart and appropriated as an endowment for the University of Texas, while the enabling act (Senate Bill No. 403) limits that taxation to the one million acres set apart by the Constitution of 1876 and the one million acres set apart by the Eighteenth Legis- lature in 1883. For practical purposes this distinc- tion is immaterial, because all of the more than 200,000 acres embraced in the fifty league grant to the University by the Republic of Texas in 1839 have been sold, and all the University lands now unsold are embraced in the endowments of 1876 and 1883."

The last legislative appropriation to pay such taxes is found in Section 2(b) of H.B. 246, Ch. 339, Acts, 50th Legislature, Regular Session. Section 2(b) reads, in part, as follows:

"(b) In accordance with the Constitutional re- quirement that taxes for county purposes only be paid by the General Fund to counties in which are located endowment lands set aside to the University of Texas by the Constitution of the State of Texas and the Act of 1883, and in further compliance with Senate Bill No. 403, Chapter 93, Acts of the Regular Session of the Forty-second Legislature, there is hereby appropriated to the State Comptroller of Pub- lic Accounts for the payment of taxes to such counties for county purposes only upon said University owned land the sum of not to exceed Sixty Thousand Dollars ($60,000) for the fiscal year ending August 31, 1948, and the sum of Fifty Thousand Dollars ($50,000) for the fiscal year ending August 31, 1949. Provided, however, that any moneys herein appropriated may be used for the.purpose of paying current and delinquent taxes that have accrued, or may accrue, under the pro- visions of the above-mentioned Constitutional Amend- ment and under Senate Bill No. 403, Chapter 93, Acts of the Regular Session of the Forty-second Legislature."

The general rule is that penalty and interest may be imposed for nonpayment of taxes, but a statute which merely authorizes and provides for the levy of a tax does not carry with it penalties and interest, neither of which accrues in the absence of express provision therefor. R.C.L. Vol. 26, pp. 385, 386, Secs. 342, 343; 51 Am. Jur. 849, and authorities cited therein; 61 C.J. p. 1482, Sec. 2104; p. 1515, Sec. 2218, the last named section citing the following Texas cases which hold that interest is not recoverable on taxes unless the statute expressly so provides: Cave v. Houston, 65 Tex. 619; Western Union Tel. Co. v. State, 55 Tex. 314 (rev. on other grounds 105 U.S. 460, 26 L. Ed. 1067); Edmonsen v. Galveston, 53 Tex. 157.

The provisions of the Constitution and of the statute which impose this particular tax upon lands otherwise exempt from taxation nowhere expressly provide for penalty and interest. The only language which might be construed to embrace penalty and interest is found in the proviso to the effect that such lands shall be subject to taxation for county purposes "to the same extent as lands privately owned." We are of the opinion that this phrase has reference to the particular county rate of taxation which the County Tax Collector uses in computing the amount of taxes due the county on said lands at the valuation fixed by the State Tax Board. See Section 5 of Article 7150c. Section 6 of Article 7150c expressly provides that the warrants for these taxes shall be ". . . issued and mailed to the several counties within the time as now provided by law for the payment of county taxes on privately owned lands"; but, as we have previously said, the imposition of a tax and provisions relating to payment of same are insufficient to impose payment of penalty and interest in the absence of specific legislative authorization. We think that this particular case is the strongest possible case for the application of this rule for the reason that the State's partial surrender of her sovereign immunity from taxation should not be enlarged by implication.

The language used by the 50th Legislature in making the appropriation "for the purpose of paying current and delinquent taxes that have accrued, or may accrue, . . ." is consistent with the views we have expressed in this opinion.

Although these views dispose of your question, it should be added that if there were any doubt as to the proper construction of Article 7150c, the practice of the departmental head charged with the duty of administering a statute carries great weight in determining the operation of that statute. Sutherland, Statutory Construction, §5105, and authorities cited therein. The result we have reached in this opinion is in line with your Department's consistent construction of Article 7150c since its enactment.

## SUMMARY

Article 7150c, V.C.S., which provides that the State of Texas shall pay county taxes on lands owned by The University of Texas, does not impose penalty and interest in the event of nonpayment of such taxes; nor does Section 2 of H.B. No. 246, Ch. 339, Acts, 50th Legislature, Regular Session, appropriate funds for the payment of penalty and interest on any portion of such taxes as are past due.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By *Marietta Creel*

Mrs. Marietta Creel
Assistant

MC/wb/JCP

APPROVED:

*Price Daniel*

ATTORNEY GENERAL